**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MICHAEL CALIFANO,

                                   *Plaintiff*,

                                                                        **MEMORANDUM**
                                                                        **ORDER**

        -against-                                                        24-cv-04346 (AMD) (JMW)


THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE
CENTRE, NEW YORK *et al.*,

                                   *Defendants*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S:**

        Lawrence Spasojevich, Esq.
        Brendan Patrick Tighe, Esq.
        **Spasojevich Law P.C.**
        9224 Queens Boulevard, Ste #740010
        Rego Park, NY 11374
        *Attorneys for Plaintiff*

        Kathryn J. Russo, Esq.
        Taylor Michelle Ferris, Esq.
        **Jackson Lewis, P.C.**
        58 South Service Road, Suite 250
        Melville, NY 11747
        *Attorneys for Defendants*

**WICKS**, Magistrate Judge:

        Plaintiff Michael Califano, an openly gay/homosexual, was employed by Defendants as a

Math and English teacher at Maria Regina School until he was terminated in December 2023.

He was terminated for private social media posts allegedly sent from an anonymous source to the

Diocese of Rockville Centre.  These posts contained pictures showing Plaintiff kissing his

partner, another male.  Plaintiff thereafter commenced this action against the Roman Catholic

Diocese of Rockville Centre, New York and Maria Regina School (collectively "Defendants")

alleging a single cause of action for unlawful discrimination and wrongful termination in violation of Title VII of the Civil Rights Act of 1964.  Put simply, Plaintiff claims that Defendants unlawfully terminated him based on his sexual orientation.

The Hon. Ann M. Donnelly held a pre-motion conference with the parties on August 13, 2024 regarding Defendants' anticipated motion to dismiss and the Court set a briefing schedule for that motion.  In the interim, Defendants seek to stay discovery pending the outcome of that motion to dismiss.  (ECF No. 18.)  Plaintiff opposes.  (ECF No. 20.)  For the reasons stated herein, Defendants' motion to stay discovery pending the motion to dismiss is **DENIED**.

## BACKGROUND

Maria Regina School is a "Nursery-8th Grade Catholic Elementary School that provides for the education of [its] students modeling the Ignatian philosophy of *cura personalis*, meaning 'care for the whole person.'"  Maria Regina School, *Who We Are,* https://mariareginaschool.org/who-we-are (last visited September 24, 2024).

Plaintiff worked at Maria Regina School as a Math and English teacher, a position that is considered "secular in nature and not ministerial."  (ECF No. 17 ¶ 25.)  Plaintiff openly identifies as a gay male, which Plaintiff claims was known to Defendants before Plaintiff was hired.  (*Id.* ¶¶ 9-10, 21-24.)  Plaintiff's daily job duties did not involve "teaching the tenants of Catholicism" and Defendants even employed other teachers to teach the Catholic faith to the students.  (*Id.* ¶¶ 29, 31-34.)

On November 27, 2023, the Diocese received an anonymous email containing social media posts from Plaintiff's partner's (another male) private account of the two kissing.  (ECF No. 17 ¶¶ 39-41.)  Plaintiff met with several personnel from the school and was ultimately

terminated on December 27, 2023.  (*Id.* ¶¶ 42-45.)  He was told in sum and substance that he was terminated because of the online posts that showed him kissing another man.  (*Id.* ¶ 46.)

Upon being terminated, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission against both Defendants and subsequently received a "Notice of Right to Sue" from the Commission.  (ECF No. 17 ¶¶ 2-5.)

On July 11, 2024, Defendants filed a letter motion for a pre-motion conference regarding their anticipated motion to dismiss.  (ECF No. 14.)  In the letter, Defendants argued that Plaintiff's claims were barred under the church autonomy doctrine and the ministerial exception of the First Amendment's Free Exercise and Establishment clauses.  (*Id.*)  Plaintiff, however, opposed the letter, stating that Defendants' reliance on the cited cases is misplaced and neither of the defenses apply here.  (ECF No. 15.)  Judge Donnelly held a pre-motion conference with the parties on August 13, 2024, granting Plaintiff the opportunity to file an amended complaint. (Electronic Order dated Aug. 13, 2024.)  Notably, Judge Donnelly emphasized the irrelevance of Defendants' cited cases to the case at bar, as those cases were in the summary judgment phase, while this case is merely in the motion to dismiss phase.  Plaintiff filed the Amended Complaint and added, *inter alia,* further details about Defendants' awareness of his sexuality (*see e.g.,* ECF No. 17 ¶¶ 21-26).  Defendants subsequently filed a letter stating they wished to file a motion to dismiss the Amended Complaint (ECF No. 21).  Defendants have since filed their motion to dismiss on September 19, 2024.  (ECF Nos. 22-25.)  In their motion, Defendants assert similar, if not identical, arguments as they do in their motion to stay.  (*See generally* ECF No. 25.)  The motion to dismiss is set to be fully briefed by October 31, 2024.  (Electronic Order dated Aug. 27, 2024.)

In the interim, the Court set a briefing schedule concerning Defendants' motion to stay (Electronic Order dated July 23, 2024) which was filed on August 22, 2024. (ECF Nos. 18-20.) Oral argument on the motion to stay was held on September 24, 2024.

In their motion to stay, Defendants argue that the Plaintiff's claim lacks merit and the anticipated motion to dismiss will dispose of the *entire* case. (ECF No. 18-8.) Defendants argue that Plaintiff's claim is barred by the church autonomy doctrine and the ministerial exception of the First Amendment. (*Id.*) Regarding the other factors concerning the stay, Defendants maintain that discovery would be "contentious, lengthy and expensive" and that Plaintiff would *not* be unfairly prejudiced by an order granting the stay. (*Id.*)

Plaintiff opposes stating that he has pled a *prima facie* case of employment discrimination under Title VII, setting forth a plausible claim, that the Defendants' defenses are "fundamentally flawed" and do not otherwise appear on the face of the Complaint, that the Teacher Handbook holds no value here, that the use of the Instagram post is improper on a motion to dismiss, and discovery must take place to assess Plaintiff's job duties as it applies to the ministerial exception. (ECF No. 20.) Further, discovery would not be costly since Plaintiff only worked for Defendants for a limited time since 2022 and Plaintiff *would* indeed be prejudiced if discovery is delayed. (*Id.*)

In addition to reiterating the arguments in their motion, Defendants reply that the Teacher Handbook as well as public documents and photos highlighting the religious nature of Plaintiff's job duties are relevant and should be considered. (ECF No. 19.)

## LEGAL STANDARD

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for

4

counsel, and for litigants.'" *Thomas v. N.Y. City Dep't of Educ.*, No. 09-CV-5167, 2010 WL

3709923, at *2 (E.D.N.Y. Sept. 14, 2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254

(1936)). The mere filing of a dispositive motion, in and of itself, does not halt discovery

obligations in federal court.[1] That is, a stay of discovery is not warranted, without more, by

the mere pendency of a dispositive motion. *Weitzner v. Sciton, Inc.*, No.CV 2005-2533,

2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006). Rather, the moving party must make a

showing of "good cause" to halt discovery. *Chesney v. Valley Stream Union Free Sch. Dist.

No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006); Fed. R. Civ. P. 16(b)(4) (discovery schedule

"may be modified only for good cause and with the judge's consent"); *Ass'n Fe y Allegria v.

Republic of Ecuador*, Nos. 98 Civ. 8650 (BSJ), No. 98 Civ. 8693 (BSJ), 1999 WL 147716, at

*1 (S.D.N.Y. Mar. 16, 1999) ("Together, these provisions enable the district court to stay

discovery where resolution of a preliminary motion may dispose of the entire action."). In

evaluating whether a stay of discovery pending resolution of a dispositive motion, courts

typically consider: "(1) the breadth of discovery sought, (2) any prejudice that would result,

and (3) the strength of the motion." *Robbins v. Candy Digital Inc.*, No. 23-CV-10619 (LJL),

2024 WL 2221362, at *1 (S.D.N.Y. May 15, 2024) (internal citations omitted).

   "Upon a showing of good cause[,] a district court has considerable discretion to stay

discovery pursuant to Rule 26(c)." *Al Thani v. Hanke,* No. 20-CV-4765 (JPC), 2021 WL 23312,

at *1 (S.D.N.Y. Jan. 4, 2021) (alteration in original) (quoting *Republic of Turkey v. Christies,

Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018)). In assessing good cause, courts look to "the

particular circumstances and posture of each case." *Ellington Credit Fund, Ltd. v. Select*

---

[1] Contrast this with New York state court practice which expressly provides for a stay of discovery
pending the filing of a dispositive motion. *See* N.Y. CPLR 3214(b) (automatic stay of "disclosure" upon
service of dispositive motion).

*Portfolio Servs., Inc.*, No. 08 Civ. 2437 (RJS), 2008 WL 11510668, at *2 (S.D.N.Y. June 12, 2008) (quoting *Hachette Distrib., Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991)). *Au fond,* the specific facts, circumstances, and context of the case guide the Court in deciding whether discovery should be stayed.

It is against this backdrop that the present motion is considered.

## DISCUSSION

### A.  Strength of Defendants' Motion to Dismiss Plaintiff's Claim[2]

Plaintiff argues that as a matter of pleading, he has made his *prima facie* showing of employment discrimination based on sex in violation of Title VII based on the sentiments from Defendants' personnel that he was terminated based on the social media posts.  (ECF No. 20 at 5); (ECF No. 1.)  Notably, Defendants have not addressed the merits of Plaintiff's claim *at all* in support of the instant motion for a stay.  (*See generally* ECF No. 18-8.)

"Title VII provides that '[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race, color . . . sex.'"  *Williams v. Metro-North Commuter R.R. Co.,* No. 11 Civ. 7835 (CM), 2012 U.S. Dist. LEXIS 86631, at *25 (S.D.N.Y. June 20, 2012) (citing 42 U.S.C. § 2000e-2(a)).

Generally, to survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.  When considering a motion to dismiss under 12(b)(6), the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff."  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145

---

[2] The Court's consideration and analysis of the arguments set forth in Defendants' motion to dismiss is purely for purposes of weighing whether a stay should be granted.  This analysis should not in any way be construed as the Court prejudging the merits or predicting the outcome of the motion to dismiss which, once filed, will be pending before Judge Donnelly for adjudication.

(2d Cir. 2012).  However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Ashcroft v. Iqbal*, 556 U.S. at 663.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  More is required.

The *McDonnell Douglas* standard[3] is *not* applicable at the motion to dismiss stage, as that analysis applies at the summary judgment phase or trial.  *See Levy v. Legal Aid Soc'y,* 408 F. Supp. 3d 209, 216 (E.D.N.Y. 2019) ("To survive a motion to dismiss, however, a plaintiff is not required to plead a prima facie case of discrimination, and any inquiry into any non-discriminatory reasons for a defendant's conduct is reserved for summary judgment or trial."); *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 84 (2d Cir. 2015) ("At the pleadings stage of the litigation, Vega was not required to plead a prima facie case of discrimination as contemplated by the *McDonnell Douglas* framework."); *see also Rochelle v. Autozoners, LLC*, 21-CV-01220 (PMH), 2023 U.S. Dist. LEXIS 160285, at *15 (S.D.N.Y. Sept. 11, 2023) (stating that discrimination claims are analyzed under the *McDonnell Douglas* burden shifting framework at the summary judgment stage).  Rather, at the motion to dismiss stage, "a [p]laintiff only has a minimal burden of alleging facts suggesting an inference of discriminatory motivation." *Levy,* 408 F. Supp.3d at 216 (internal citations omitted).  Put plainly, at this juncture, Plaintiff Califano "must allege that the employer took adverse action against h[im] at

---

[3] Employment discrimination cases brought under Title VII - where a plaintiff alleges disparate treatment *without direct evidence* of discrimination - are analyzed under the *McDonnell Douglas* three-stage, burden shifting framework.  *Vega v. Hempstead Union Free School Dist*., 801 F.3d 72, 82-83 (2d Cir. 2015) (citation omitted). A plaintiff establishes a *prima facie* discrimination case by showing that "(1) []he is a member of a protected class; (2) []he is qualified for h[is] position; (3) []he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Id*. (citations omitted).  The defendant-employer then has the burden to show a legitimate, nondiscriminatory reason for the disparate treatment, and if articulated, the burden shifts back to plaintiff to show the employer's reason was pretext for discrimination. *Id*.

least in part for a discriminatory reason, and []he may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega,* 801 F.3d at 87.  In his Complaint, he has done just that.

Plaintiff has plainly satisfied this standard.  Here, Plaintiff never received any criticisms about his job performance.  Instead, the Complaint alleges he was terminated based exclusively on his sexual preference after Defendants saw a social media post of him kissing his partner— another male.  More importantly, there is *direct evidence* for the termination: Defendants' own personnel alluded to his homosexuality as a reason for the termination.  (ECF No. 17 ¶ 46) ("Father Jason and a representative from the Human Resources Department informed Plaintiff, in sum and substance, that he had been terminated because the social media posts that were sent to the Diocese of Rockville Centre showed Plaintiff kissing his partner; another man.").  Accordingly, from a pleadings standpoint, Plaintiff has adduced facts demonstrating that Defendants indeed took an adverse action against him in part -- if not solely -- for discriminatory reasons.  That is enough in the undersigned's view to state a claim.

Defendants point to two affirmative defenses, which appear to be their attempt to rebut Plaintiff's *prima facie* showing of his Title VII claim.  Specifically, Defendants argue that Plaintiff's claim is barred by the church autonomy doctrine and the ministerial exception.  The Court addresses each of these defenses in turn below.

### B.  Defendants' Defenses

Defendants raise these two defenses however, both are rife with issues of fact, and neither leads to the conclusion that as a matter of law on a motion to dismiss, the Complaint should be dismissed.  Both are addressed below.

a.  **Ministerial Exception**

Defendants argue that "religion is an extremely important aspect of teaching at a Catholic school," like the school involved here.  (ECF No. 18-8.)  Further, Plaintiff signed documents in which he agreed to comply with the statements in the Teacher Handbook.  (*Id.*)  And Plaintiff's duties included praying with the students and escorting them to Mass.  (*Id.*)  Accordingly, they argue the ministerial exception undoubtedly applies to these circumstances.

In their motion to dismiss, Defendants urge the Court to consider the letter of intent— similar to an offer of employment letter, teacher handbook, Plaintiff's receipt of the handbook, and certificates of completion of religious coursework as being incorporated by reference or otherwise integral to the Amended Complaint.  (ECF No. 25 at 14.)  The reason is simple say Defendants:  Plaintiff refers to his responsibilities as a Catholic school teacher and those responsibilities are outlined in the handbook and letter of intent.  (*Id.*)

Documents outside the four corners of the pleading are ordinarily not to be considered on a motion to dismiss.  In this regard, cases relied upon at the summary judgment stage are inapposite, and the anticipated motion to dismiss has not been converted to a motion for summary judgment.  *See Stolarik v. New York Times Co*., 323 F. Supp. 3d 523, 538 (S.D.N.Y. 2018) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.") (citing Fed. R. Civ. P. 12(d)); *BSG Res. Guinea Ltd. v. Soros*, No. 17 Civ. 2726 (JFK), 2020 U.S. Dist. LEXIS 216056, at *2-3 (S.D.N.Y. Nov. 18, 2020) ("[W]here matter outside the pleadings is offered and not excluded by the trial court, the motion to dismiss should be converted to a motion for summary judgment in accordance with Federal Rule of Civil Procedure 12(d).") (citing *Nakahata v. New York-Presbyterian Healthcare Sys., Inc*., 723 F.3d 192, 202 (2d

Cir. 2013)).  Consequently, and rightfully so, Plaintiff urges the Court to disregard Defendants' use of the Teachers Handbook and Thanksgiving Instagram post (ECF No. 20) as they are inappropriate for the Court's consideration on a motion to dismiss.  *See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 196 (2d Cir. 1990) ("In reviewing the sufficiency of the complaint [on a motion to dismiss], we will consider only the facts alleged in the [] complaint and any documents attached thereto as exhibits or incorporated by reference."); *Cont'l Cas. Co. v. Marshall Granger & Co.*, 921 F. Supp.2d 111, 117 (S.D.N.Y. 2013) (stating that on a motion to dismiss, courts may consider facts and documents attached or incorporated by reference to the complaint, documents "integral" to the complaint, defendant's documents that plaintiff relied on in framing the complaint, and facts that can be taken by judicial notice); *Madison Equities, LLC v. Condren (In re Theater Row Phase II Assocs.,* 385 B.R. 511, 520 (Bankr. S.D.N.Y. 2008) (same).  Here, neither the Handbook nor the Instagram post were attached or relied upon by Plaintiff and therefore should not be considered.  Further, courts can only take judicial notice of documents "to determine what statements the documents contain" but "not for the truth of the matters asserted." *Quick Cash of Westchester Ave. LLC v. Village of Port Chester,* 11-CV-5608 (CS), 2013 U.S. Dist. LEXIS 4229, at *10 (S.D.N.Y. Jan. 10, 2013) (cleaned up).  Thus, the Court may not take judicial notice of the Instagram post as it is being offered for the truth of the matters asserted—namely that Plaintiff did indeed lead the Thanksgiving prayer for purposes of applying the ministerial exception.

The cases relied upon by Defendants are easily distinguished since they involved motions for summary judgment, which are a far cry from the procedural posture of this case: *Billard v. Charlotte Catholic H.S. et al*., 101 F.4th 316 (4th Cir. 2024) (finding that the exception applied for Catholic school after firing English and drama teacher for plans to marry his same-sex

partner where teacher was entrusted with "vital religious duties" and was a "messenger of its faith" though not regularly tasked with providing religious instruction); *Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc*., 41 F.4th 931, 941-42 (7th Cir. 2022) (affirming summary judgment in favor of school where claims by guidance counselor who was terminated for entering into same-sex union were barred by the exception since she was "expressly entrusted" with communicating the faith to the students and her daily responsibilities included leading prayer); *but see Martin v. SS Columba-Brigid Catholic Church*, No. 1:21-cv-491, 2022 U.S. Dist. LEXIS 144616, *16-19 (W.D.N.Y. Aug. 11, 2022) (granting motion to dismiss for "Minister of Music's" discrimination claims who "arrang[ed] choir music for mass" and "understood that she would be perceived as a religious leader" despite her other secular tasks). Indeed, at the pre-motion conference before Judge Donnelly on August 13, 2024, Judge Donnelly aptly observed that by and large the cases Defendants rely upon for support on the ministerial exception were decided at the summary judgment stage.  (ECF No. 20 at 5.)

The Free Exercise Clause of the First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...."  *Kane v. De Blasio,* 623 F. Supp. 3d 339, 353 (S.D.N.Y. Aug. 26, 2022) (citing U.S. CONST., amend. I). "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *We the Patriots United States v. Conn. Office of Early Childhood Dev.,* 76 F.4th 130, 163 (2d Cir. 2023) (*citing Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 877 (1990)).  Thus, the clause "protects an individual's private right to religious belief, as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion."  *Kane,* 623 F. Supp. 3d at 353 (internal citations omitted).

The Establishment Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion."  U.S. Const., Amend. I.  In other words, the clause "forbids excessive government entanglement with religion."  *Rweyemamu v. Cote,* 520 F.3d 198, 208 (2d Cir. 2008) (citing *Lemon v. Kurtzman,* 403 U.S. 602, 613 (1971)).

The ministerial exception is a creature of the Free Exercise and Establishment Clauses. "To successfully invoke [the ministerial exception], where applicable, a defendant must show that a plaintiff (1) worked for a 'religious institution' [and] (2) as a 'minister.'" *Brandenburg v. Greek Orthodox Archdiocese of N. Am.,* 20-CV-3809 (JMF), 2023 U.S. Dist. LEXIS 30574, at *26 (S.D.N.Y. Feb. 23, 2023) (citing *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,* 565 U.S. 171, 188-89 (2012)).  "Whether someone qualifies as a 'minister' for purposes of the exception does not turn only on the person's formal title. Instead, the inquiry is flexible and fact specific. What matters, at bottom, is what an employee does." *Id*. (quoting *Our Lady of Guadalupe Sch. v. Morrissey-Berru,* 591 U.S. 732, 753, 140 S. Ct. 2049, 2064 (2020)).

The applicability of the ministry exception in other cases is worth noting.  In *Hosanna-Tabor*, the respondent Cheryl Perish was a fourth grade "called" teacher at a Lutheran school. *Hosanna-Tabor*, 565 U.S. at 178." A "called" teacher is regarded as "having been called to their vocation by God" and must meet multiple academic and religious requirements such as special training, theological study of eight college-level courses, endorsement from the local Synod district, and pass an oral examination by a faculty member. *Id*. at 177.  "Called" teachers receive the formal title "Minister of Religion, Commissioned," may serve for an open-ended term, and may only lose their called status by a supermajority vote by the congregation. *Id*.  In contrast, "lay" teachers may be hired via contracts and do not need to be trained by the Synod or be Lutheran. *Id*.  Perish had undergone various trainings and in her role as a teacher would teach

different secular subjects and a religious class four days a week which involved prayer and

devotional exercises. *Id*. at 178.  Perish alleged she was fired in violation of the Americans with

Disabilities Act (ADA) based on her disability of narcolepsy. *Id*. at 178-79.  The Court, finding

for the first time that a ministerial exception grounded in the First Amendment exists, applied the

exception in that case, *id*. at 188, 190, noting its hesitancy in establishing a "rigid formula" to

determine when an employee qualifies as a minister.  *Id*. at 173.  It instead considered the

following four circumstances:

> (1) Plaintiff's title as minister
>
> (2) whether the position reflected a significant degree of religious training and formal commissioning
>
> (3) how the plaintiff held herself out as a minister of the church by accepting the formal call and
>
> (4) the duties of the plaintiff's job in carrying out the Church's message and mission.

*Id*. at 191-92.  There, Perish was "held out" as a minister amongst other members; she accepted

her role as a "called" teacher and agreed to the respective terms and duties of the job, which

included teaching students the Word of God and leading them in prayer.  *Id*.  The Supreme Court

affirmed the Sixth Circuit's ruling to grant summary judgment in the defendants' favor despite

their lack of a religious reason for termination. *Id*. at 174.  Although her religious duties only

constituted 45 minutes of her day, the exception was not diminished and therefore still applied to

Perish. *Id*. at 193.  The Supreme Court stated that all religious members perform both religious

and secular tasks and the circuit court erred in having the amount of time Perish spent

performing her religious duties be "largely determinative." *Id*. at 193.

The plaintiff in *Fratello v. Archdiocese of N.Y.,* 863 F.3d 190, 192 (2d Cir. 2017)

involved a principal in a Roman Catholic School who alleged she was terminated based on her

gender. The court looked into four factors to determine whether the ministerial exception applied to her role: (1) formal title; (2) the substance reflected in that title; (3) the employee's use of that title; and (4) the important religious functions that she performed. *Id.* (internal citations omitted). The court, citing *Hosanna,* stated that the focus should not be on the title, but instead, the function that the employee performed. *Id.* at 202, 205. In applying the four considerations, the court found that the ministerial exception applied: (1) her title as principal did *not* involve a suggestion of clergy membership; (2) her role entailed a commitment to Church teachings and developing a Christian spirit and community of faith at the school and he was additionally required to complete various courses centered on Catholicism; (3) she understood herself to be a religious leader at the school and she "led school prayers, conveyed religious messages in speeches and writings, and expressed the importance of Catholic prayer and spirituality in newsletters to parents;" and (4) she worked closely with teachers to execute the school's religious education mission, led daily prayers and prayers at ceremonies, approved logistics for annual mass, delivered speeches that were religious-adjacent, and was evaluated based on her role as a religious leader in the school. *Id.* at 206-10.

Less than a decade after *Hosanna*, the Supreme Court decided *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732 (2020). In that case, the plaintiffs were teachers and considered lay employees at a Catholic school. They taught all subjects, including those focused on religion, but did not have as much religious training as the respondent in *Hosanna.* The Court ruled that one should not look solely at an employee's title—rather, look to "what an employee does" and went on to apply the four *Hosanna-Tabor* factors. *Id.* at 753. The Court consulted employment agreements and handbooks to determine whether the ministerial exception applied. *Id.* at 739-42. The school's mission entailed modeling and promoting the Catholic faith and

15

morals (*id.* at 740) and "[e]ducating and forming students in the Catholic faith," *id.* at 757, and both plaintiffs "provided religious instruction every day using a textbook designed for use in teaching religious" to the students (*id.* at 740). Further, the plaintiffs were considered "teacher[s] of religion," required to prepare and participate in religious activities, tested students on religious studies, and often prayed with the students. *Id.* at 759-60. One plaintiff even testified that she "tried to instruct her students in a manner consistent with the teachings of the Church" and that she was "committed to teaching children Catholic values and providing a faith-based education." *Id.* at 741. In finding that the exception applied, the court stated that while they had no formal title as "ministers," nor the same level of formal training as the plaintiff in *Hosanna-Tabor*, "their core responsibilities as teachers of religion were essentially the same." *Id.* at 758.

Defendants argue that courts look to "whether the religious institution viewed the employee's role as vital in carrying out the church's mission"[4] and that Defendants believed all their teachers furthered the school's mission. (ECF No. 18-8 at 13-14.) But Plaintiff's role as an *English and Math* teacher can hardly be considered a role "vital in carrying out the church's mission." Instead, Defendants point to *isolated* incidents of ministerial acts including praying with his students in the morning, escorting them to mass, and leading the Thanksgiving prayer on *one occasion*.[5] (ECF No. 18-1 at 3); *cf. Friedlander v. Port Jewish Ctr.*, 588 F. Supp. 2d 428,

---

[4] According to Defendants here, Plaintiff was to embody the school's mission: "We, the educators of Maria Regina, believe: . . . . (4) In Catholic values, morals, tradition, and attitudes, as well as in modeling in deeds and words the teachings of Jesus Christ. (5) Each child should be provided with an environment in which faith, love, and trust in God and others is nurtured, lived and witnessed in daily life." *See* Maria Regina Catholic School, School Mission Statement, https://mariareginaschool.org/mission (last visited Sept. 6, 2024).

[5] Relatedly, Defendants point to Plaintiff's serving as a Eucharistic minister—"someone who helps a priest administer the elements of Holy Communion [] during church services." (ECF No. 25 at 26.) Defendants, though, have not identified whether this was a routine task for Plaintiff as part of his secular job duties.

431 (E.D.N.Y. 2008) (finding it undisputed that the plaintiff's work as a Rabbi was a

"pervasively religious function"). Here, the subject matters Plaintiff taught were completely

secular, and a separate teacher was hired to exclusively teach the students about Catholicism.

Unlike the educators in *Our Lady of Guadalupe* who taught religion, the plaintiff in *Hosanna*

who "transmitt[ed] the Lutheran faith" and led religious mass, and *Fratello* who completed

various coursework on religious faith to fulfill *her* role, Plaintiff's position here personified none

of these tasks.[6]  *See DeWeese-Boyd v. Gordon Coll.,* 487 Mass. 31, 163 N.E.3d 1000, 1012, 1017

(Mass. 2021) (declining to apply the exception for a social work professor where although

expected to integrate the faith into her teaching, she did not "pray with her students, participate

in or lead religious services," or escort her students to the chapel)*; Ratliff v. Wycliffe Assocs.,*

*Inc.,* No: 6:22-cv-1185-PGB-RMN, 2023 U.S. Dist. LEXIS 92811, at *10-13 (M.D. Fla. May 26,

2023) (finding no ministerial exception existed and denying motion to dismiss where plaintiff

title and duties as a software developer were not ministerial, he did not have any religious

training for his role, he never held himself out as a minister, and he did not perform duties

reflecting a fulfillment of the religious mission); *cf. Butler v. St. Stanislaus Kostka Catholic*

*Acad.,* 609 F. Supp. 3d 184, 194-96 (E.D.N.Y. 2022) (finding that, *inter alia*, the plaintiff's job

as an English and Social Studies teacher required a Catholic education; the new teacher

orientation contained a multitude of presentations involving prayer and his obligations as a

teacher to impart the faith onto students; the employment contract expressly stated that he would

be teaching the Catholic Faith to his students and would not act contrary to that faith; and the

---

[6] Defendants attach certificates of completion for various coursework that Plaintiff completed while working for Defendants.  Some of these courses included "The Sacramental Economy," "The Mission of Catholic Schools and the Role of Teachers," "The Universal Call to Holiness," "Our Life in Christ: The Basics of Catholic Morality," and "The Evangelizing Classroom."  (*See* ECF No. 24-4.)  Still, Defendants have not demonstrated the vitality or relation of these courses to Plaintiff's role.  Further, consideration of these documents is inappropriate on a motion to dismiss.

handbook stated he would be terminated should he violate any tenets of Catholic morality).  As Justice Sotomayor stated in her dissent in *Our Lady of Guadalupe,* extending the ministerial exception to plaintiffs who teach short religious modules, which is more than Plaintiff has done in this case, would effectively shield employers who fired teachers for *any* reason without legal consequence.  *Our Lady of Guadalupe Sch*., 591 U.S. at 766 (Sotomayor, J., dissenting).

At bottom, the conclusion to be drawn from the review of the case law in this area demonstrably shows that the question of application of the ministerial exception is fact specific. That said, resolution on a motion to dismiss would be inappropriate.

### b.  Church Autonomy Doctrine

Defendants argue that the Plaintiff's claim is also barred by the church autonomy doctrine in light of the Supreme Court's pronouncement in *Our Lady of Guadalupe* 591 U.S. 732 (2020) that religious institutions should be free to make their own hiring decisions.  (ECF No. 18-8 at 16.)

Yet another right emanating from the Free Exercise and Establishment Clauses is the church autonomy doctrine.  "The church autonomy doctrine provides that religious associations have 'independence in matters of faith and doctrine and in closely linked matters of internal government.'"  *Belya v. Kapral,* 45 F.4th 621, 630 (2022) (citing *Our Lady of Guadalupe,* 591 U.S. at 747).  "To allow anyone 'aggrieved by [a religious association's] decisions' to 'appeal to the secular courts and have [those decisions] reversed' subverts the rights of religious associations to retain independence in matters of faith, doctrine, and internal government."  *Id.* (citing *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 114-15 (1952)).  "[T]he authority to select and control who will minister to the faithful--a matter strictly ecclesiastical,--is the church's alone."  *Hosanna-Tabor,* 565 U.S. at 195.  "Judicial review of the way in which religious schools

18

discharge those responsibilities would undermine the independence of religious institutions in a way that the First Amendment does not tolerate." *Our Lady of Guadalupe,* 591 U.S. at 738.

In *Butler v St. Stanislaus Kostka Catholic Acad.*, 609 F Supp 3d 184, 200 (E.D.N.Y. 2022), the Hon. Eric Komitee was faced with a similar situation, again on a motion for summary judgment. There, a Catholic school teacher was terminated allegedly based on his sexual orientation in violation of Title VII and other state and city laws. The plaintiff told the defendants that "having to live Church doctrine all day" left him feeling wounded and unwanted and further stated his intention to marry his boyfriend. *Id.* at 204. Judge Komitee granted summary judgment in the defendants' favor, stating that both the Free Exercise and Establishment Clauses "foreclose[d] certain employment discrimination claims brought against [a] religious organization." *Id.* at 190. The plaintiff was terminated for religious reasons and the church autonomy doctrine would preclude questioning those reasons. *Id.* at 191. The *Butler* court found that even if the ministerial exception did not apply (which it did in that case), summary judgment would be granted given the failure to establish the *McDonnell Douglas* elements and the church autonomy principle. *Id.* at 198. The court ultimately stated that the plaintiff failed to satisfy the third step—that is, that the employer's reason alleged non-pretextual reason for termination was false and discrimination was the true reason. *Id.* at 200. Notably, Judge Komitee said that plaintiff could not rebut the non-pretextual, religious reasons given by defendants. *Id.* at 201-02. Questioning the defendants' reasons for the termination would violate the church autonomy doctrine.

Here, however, as discussed above, as pleaded, Plaintiff's duties are not as intertwined with religious doctrine. He was not a rabbi, priest, or member of the clergy with formal doctrinal training. Therefore, deciding his Title VII claim would not impinge on the church autonomy

doctrine and Defendants' defense fails. And here, Defendants fail to point to demonstrate that they would have fired Plaintiff even in spite of his identifying as a homosexual male. Furthermore, on a motion to dismiss, the challenged pleading is to be assumed true—far different than what Judge Komitee was presented with a full record on summary judgment.

At a bare minimum, and just as the court in *Ference v. Roman Catholic Diocese of Greensburg*, No. 22-797, 2023 U.S. Dist. LEXIS 8416, at *13 (W.D. Pa. Jan. 18, 2023) observed, the defense should not be raised at this motion to dismiss juncture:

> the church autonomy doctrine is an affirmative defense and *thus not appropriately raised at the motion to dismiss stage*. *Hosanna-Tabor*, 565 U.S. at 195 n.4…. Application of the doctrine requires a factual determination of the scope of Mr. Ference's employment to determine whether his role implicates matters of church governance or is essential to Aquinas's religious mission. At this early stage of the litigation, the Court accepts as true Mr. Ference's allegations that he had no spiritual role at Aquinas and was hired solely as a secular educator.

(emphasis added). Accordingly, dismissal for failure to state a claim based on the church autonomy doctrine would appear not warranted at this stage.[7]

## C. Breadth of Discovery Sought

Defendants aver that discovery will be "broad, costly, and burdensome" and would make little sense to complete if the motion to dismiss is granted. (ECF No. 18-8 at 17.) Defendants anticipate "extensive written discovery, multiple depositions, and ESI discovery." (*Id.*) They also state that discovery will be contentious, especially in light of Plaintiff's efforts to retrieve pre-action discovery in the state court. [8]

---

[7] *See* fn.2 *supra*.

[8] Relevant to Defendants' argument is the fact that Plaintiff filed a petition in state court seeking discovery of documents related to his termination. (ECF No. 18-5.) Defendants however opposed that petition. (ECF No. 18-6.) The state court ordered Defendants to produce the email leading to his termination and preserve other potentially relevant documents concerning his termination. (*Id.* at 5-6.) Plaintiff later filed a motion to compel Defendants to produce the email's metadata and accused them of manipulating the evidence. (ECF No. 18-7.) To date, that motion is still pending before the state court.

However, the discovery is likely to only span "less than two years of employment" (from September 2022 to December 2023 would be a year and four months) and would thus not cause a substantial burden upon Defendants to produce.  (ECF No. 20 at 5); *Idle Media, Inc. v. Create Music Grp., Inc.,* No. 1:24-cv-00805, 2024 U.S. Dist. LEXIS 107130, at *2 (S.D.N.Y. June 11, 2024) (denying motion to stay where movant failed to "explain why producing [two years' worth of] records, available electronically, would prove burdensome."); *Fahey v. Inc. Vill. of Manorhaven,* 22-cv-7041 (KAM) (JMW), 2023 U.S. Dist. LEXIS 25883, at *3 (E.D.N.Y. Feb. 15, 2023) ("Defendants do not sufficiently address the breadth of discovery or the burdens of responding to such discovery. Though the named Defendants in this matter are numerous, the events in this action date back to only mid-2022, which mitigates the breadth and burdens of discovery."). Thus, this factor weighs *against* granting the stay.

### D.  Prejudice Upon the Parties

Defendants argue that discovery has not yet begun, and any stay would be temporary. (ECF No. 18-8 at 19.)  Plaintiff however argues that given he requests reinstatement of his position, any delay would cause more time away from his teaching.  (ECF No. 20 at 5.)  Notably, in their motion to dismiss, Defendants appear to retreat in their stance, stating that even if the motion to dismiss is denied, discovery should be limited to the scope of Plaintiff's role to determine the applicability of the ministerial exception.  (ECF No. 25 at 27-28.)

Although the ministerial and church autonomy doctrines appear to be inapplicable to Plaintiff's claim, at the very least, discovery is necessary to proceed with this case--namely to discern whether the exceptions even apply to Plaintiff's role as a Math and English teacher here. Therefore, staying discovery on these critical points would be inappropriate.  *See Fratello v. Archdiocese of N.Y.,* 863 F.3d 190, 198 (2d Cir. 2017) (discussing procedural posture of case,

wherein the court ordered discovery to take place "limited to whether Fratello was a minister within the meaning of the exception" because it could not determine whether the exception applied to plaintiff's claims to properly rule on defendant's motion to dismiss); *Ference v. Roman Catholic Diocese of Greensburg*, No. 22-797, 2023 U.S. Dist. LEXIS 8416, at *16 (W.D. Pa. Jan. 18, 2023) (stating that no discovery has yet taken place and at the motion to dismiss stage, the plaintiff's allegations must be accepted as true that he did not have religious responsibilities as alleged by the defendants but the issue "may be revisited upon a more fully developed record at the summary judgment stage").

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Stay (ECF No. 18) is **DENIED**.  An Initial Conference has been scheduled for October 22, 2024 at 9:30 a.m. before the undersigned via the Court's Zoom.  The parties are directed to complete the proposed 26(f) scheduling order attached at ECF No. 11-1 on or before October 17, 2024.  A Zoom link will be sent to the parties closer to the conference date.

Dated:   Central Islip, New York,
       September 24, 2024

**S O   O R D E R E D:**

/s/ *James M. Wicks*
   JAMES M. WICKS
United States Magistrate Judge
